# The Central Turnverein of Pittsburgh *v.* Fitzpatrick, et al., Appellant.

*Sales—Real estate—Agent's commissions—Dual agency—Interpleader.*

In an action of interpleader to determine the right to a commission on the sale price of real estate offered by the owner to any one who would find a purchaser, where it appears that the first claimant, a licensed real estate broker, though the first of the claimants to bring the property in a general way to the attention of the vendee and the one through whom the transaction was finally closed, did not submit an offer and did not communicate with the vendors until after the vendee had entered into negotiations with the second claimant for the same property at the same price and did not disclose to the vendor the name of the vendee until after the offer was accepted, or disclose that the vendee might pay a higher price, and the evidence shows that the second claimant, as a representative of the vendor, was the first to cause the vendee to determine to purchase, that he obtained the first offer, and that negotiations were pending for the purchase of the property through him before the first claimant was called in directly to represent the vendee, the fund is properly awarded to the second claimant.

Argued October 29, 1912. Appeal, No. 114, Oct. T., 1912, by Henry Fitzpatrick, defendant, from decree of C. P. Allegheny Co., Sept. T., 1910, No. 938, in equity, dismissing exceptions and awarding funds on bill of interpleader in case of The Central Turnverein of Pittsburgh, Penna., a corporation, v. Henry Fitzpatrick, E. C. Brainerd, Louis H. Kaiser and H. H. Studt. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill of interpleader.

MILLER, J., specially presiding, filed the following opinion:

The bill, alleging that the plaintiff as owner of real estate therein described, desiring to sell said property

and offering a commission of two per centum to any one who would secure a purchaser, and that a purchaser was found and sale made, but that the commission, seventeen hundred dollars, is claimed by the various defendants, prays for a decree of interpleader between the claimants. The separate answers of Henry Fitzpatrick and Louis H. Kaiser lay claim to the whole fund; the answer of E. C. Brainerd sets up claim to one-half thereof; the other defendant, H. H. Studt, disclaims any interest therein in his own right, averring that he cooperated with the defendant, Kaiser.

The following are the facts:

First. The fund, seventeen hundred dollars, under a decree of this court, was paid into court "for the benefit of such of the said parties as shall appear to be entitled thereto." The plaintiff, by the undenied averments of the bill, admits the offer of commission of two per cent. to whoever would secure a purchaser, but avers that it does not know who is entitled thereto.

Second. E. C. Brainerd, one of the claiming defendants, disclaimed any interest in the fund at the trial and by agreement he was eliminated, upon payment to him of a sum admitted, to be taken from the fund, in full compensation.

Third. Henry Fitzpatrick, one of the claiming defendants, is a real estate broker; he was licensed as such, complying with an ordinance of the City of Pittsburgh in relation thereto, on the first day of August, 1909. He was the agent of the St. Peter's Italian Roman Catholic Church and of the priests in charge for the purpose of procuring a suitable location and site for church and parochial purposes. As such agent, he brought to the notice of said church authorities various properties, running back for a period of five years or more prior to the date of the transaction in this case; among others, he frequently and continuously called attention to the property owned by the plaintiff corporation, described in the first paragraph of the bill, made part hereof,

known as the Central Turnverein of Pittsburgh's property on Forbes street. Objection was made to this property on account of its distance from the then site of this church organization and on account of the high price at which it was understood the property was being held.

Fourth. Some time prior to May 31, 1910, Reverend Father Alfonso Parziali, the then priest in charge of said congregation, sent for Fitzpatrick and told him he was willing to pay eighty-five thousand dollars, perhaps more, up to ninety thousand dollars, for said property, and authorized him to acquire it. On June 9th he gave Fitzpatrick an agreement in writing, to pay the amount of eighty-five thousand dollars therefor; this was handed to E. C. Brainerd, who, Fitzpatrick assumed, had listed the property and with whom he was ready to co-operate; Brainerd apparently took up this proposition and communicated with the plaintiff association; no speedy result being attained through Brainerd, Fitzpatrick directly entered into negotiations with the president of the plaintiff corporation, G. A. Wickman, and on June 23, 1910, submitted the following proposition:

"Pittsburg, Pa., June 23, 1910.

"To the Sales Committee of Central Turner Society:

"Gentlemen I am authorized by Responsible Person To Give The Sum of Eighty five Thousand, (85,000) Dollars for your Holdings Located om Narth Side of Farbs st City The Same To be a *Cash*

"Hoping The above Will Meet with your apoval

"I am—your Truly

"HENRY FITZPATRICK

"P S Central Turn Society To Pay Commission on Sale of % 2                     Yours H F"

Fifth. A meeting of the plaintiff association was then called, to consider this proposition; in substance, it was accepted and referred to the sales committee of the plaintiff association; on June 30th Fitzpatrick, with Father Parziali, who was then disclosed as the pur-.

chaser to the plaintiff association, with counsel for the various parties met and shortly thereafter the transaction was closed.

Sixth. In the meanwhile the other claimant, Louis H. Kaiser, janitor and care taker of plaintiff's property, not a real estate broker, and one of the members of plaintiff association, in April, 1909, had rented this property to Father Parziali for some church function; in April, 1910, he again rented the property for the same purpose to the same party. Kaiser, knowing that there was a two per cent. commission for any one who would bring about a sale, began negotiations with Father Parziali for the purchase thereof, showed him through the building; assisted him in making measurements, and submitted the asking price, ninety-eight thousand dollars or a hundred thousand dollars—the testimony is not clear as to the amount; he obtained from Father Parziali, on or before May 1st of that year, an offer in writing for eighty-five thousand dollars. This offer was promptly submitted to the plaintiff association. On June 14th Father Parziala withdrew his former offer and reduced it to eighty thousand dollars, which latter offer he repeated on June 15th. He then declined to deal further with or through Kaiser, having meanwhile taken up negotiations with his own agent, Fitzpatrick, and which culminated as set forth in the preceding findings.

Seventh. Fitzpatrick was the first of the claimants to bring this property in a general way to the attention of the church authorities; he did not submit an offer and did not communicate with the vendors until after Father Parziali had entered into negotiations with Kaiser for the same property at the same price; he did not disclose the name of his principal until after his offer was accepted, nor did he disclose to the plaintiff association that his principal might pay more. The reason given by Father Parziali for withdrawing his negotiations through Kaiser was that be believed Kaiser,

as an owner, was not in position to deal satisfactorily for him in the purchase thereof; therefore, later, he acted solely through Fitzpatrick as his agent.

Eighth. Kaiser, as the representative of the plaintiff association, was the first to cause the church authorities, through Father Parziali, the priest in charge, to make up their minds to purchase this property; he obtained the first offer; he brought the minds of the parties nearer a conclusion; the letters to him of January 14th and 15th are not an abandonment of a desire to purchase this property; the substance of them is that unless eighty thousand dollars was satisfactory nothing further would be done; this is wholly inconsistent with the vendee's then outstanding offer through Fitzpatrick, to pay eighty-five thousand dollars and perhaps more.

### CONCLUSIONS OF LAW.

First. Fitzpatrick, the admitted agent of Father Parziali, knew that his principal would pay more than eighty-five thousand dollars, perhaps ninety thousand dollars. This knowledge he did not communicate to the vendor; presumptively, as agent, he had the knowledge of his principal in that the latter was dealing through Kaiser for this same property; when he submitted his proposition that he had a responsible party to purchase the land, impliedly he became the agent of the vendor to sell.

He cannot, as a matter of public policy, under such circumstances, get for the vendee this property at the lowest possible price and claim compensation from the vendor, acting against the latter's interest. He served two masters; he cannot benefit the one to the detriment of the other and then claim compensation from the one injured. In the absence of full disclosure of the facts and of clear and satisfactory proof of an express agreement that the vendor and vendee knew all the facts and waived the operation of the rule of public policy, Rice v. Davis, 136 Pa. 439, he cannot share in this fund.

Second. Conceding that Fitzpatrick closed the sale, yet his labors only began to be effective after the parties had been brought together by Kaiser. Prior to· May 1, 1910, Fitzpatrick, while calling his principal's attention to this property with many others, was never authorized to enter into negotiations for the purchase thereof, and never came in contact with the vendor; he did not introduce or bring the vendor and vendee together.

Third. The examination of the property with a view to purchase, the determination to purchase, arose in May, 1910, through the efforts of Kaiser and resulted in the submission of a price, which was promptly submitted and never actually declined; negotiations were pending for the purchase of this property by Father Parziali through Kaiser, before Fitzpatrick was called in directly to represent the vendee. The fact that in connection with these negotiations the vendee employed Fitzpatrick as its agent to consummate what it had in process through Kaiser does not affect the result, to wit: that by Kaiser's efforts, negotiations were begun and were in existence. The letters of June 14th and 15th, reducing the offer to eighty thousand dollars, were not the end of the negotiations; Father Parziali himself says he changed the medium through whom he would deal for this same property because it was more to his advantage.

The fruits of this sale must be given to Kaiser, who was the primary, moving, and continuous cause of the final negotiations; Fitzpatrick cannot, acting for the same vendee, with presumptive knowledge of his principal's negotiations through Kaiser, concealing that same principal's name from the vendor, reap reward which the labors of the other earned.

The court made a decree awarding the fund to Louis H. Kaiser, one of the defendants. Henry Fitzpatrick, one of the other defendants, appealed.

*Error assigned,* among others, was the decree of the **court.**

*R. A. Balph,* with him *James Balph,* for appellant.—
Kaiser did not complete the sale: Barber v. Miller, 41
Pa. Superior Ct. 442; Yerkes v. Osborne, 42 Pa. Superior Ct. 253; Earp v. Cummins, 54 Pa. 394.

Interpleader did not lie: Bechtel v. Sheafer, 117 Pa.
555; Bridesburg Mfg. Co.'s App., 106 Pa. 275.

*George W. Flowers,* for Louis H. Kaiser, appellee.—
Findings of fact will not be reversed except in cases of
clear error: Com. v. Stevens, 178 Pa. 543; Stockett v.
Ryan, 176 Pa. 71; Hancock v. Melloy, 187 Pa. 371.

The sale was consummated by Kaiser: Keys v. Johnston, 68 Pa. 42; Gibson's Est., 161 Pa. 177; Hartley v.
Anderson, 150 Pa. 391.

Fitzpatrick was not entitled to recover in any case
because he was acting for both parties without disclosing the fact: Rice v. Davis, 136 Pa. 439; Everhart v.
Searle, 71 Pa. 256; Pratt v. Patterson, 112 Pa. 475; Cannell v. Smith, 142 Pa. 25; Penna. R. R. Co. v. Flanigan,
112 Pa. 558.

PER CURIAM, January 6, 1913:

As we have not been persuaded that any of the facts
found by the learned chancellor below ought to be disturbed, the decree is affirmed on his legal conclusions
which logically followed.

Appeal dismissed with costs.